IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TIMOTHY D. HAMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:13–CV–262 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Timothy D. Hamon ("Hamon") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Hamon alleges that the Administrative Law Judge ("ALJ") erred by selectively gleaning statements from his medical records, relying upon his activities of daily living, not giving weight to the opinion of a consultative physician, and failing to consider the cumulative effects of his impairments. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Hamon's Motion for Summary Judgment (Dkt. No. 15), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 17.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Hamon failed to demonstrate that he was disabled

1

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Hamon protectively filed for DIB and SSI on May 11, 2010, claiming that his disability began on August 6, 1999.[2] R. 174–185. The Commissioner denied Hamon's DIB application at the initial and reconsideration levels of administrative review. R. 56–87. The Commissioner granted Hamon's SSI application, and found him eligible for SSI benefits as of May 27, 2010. R. 110–212. On February 9, 2012, ALJ Michael Hazel held a hearing to consider Hamon's DIB claim. R. 26–55. Hamon was represented by an attorney at the hearing, which included testimony from Hamon and vocational expert Robert Jackson. R. 26–55.

On February 12, 2012, the ALJ entered his decision analyzing Hamon's claim under the familiar five-step process,[3] and denying Hamon's claim for DIB benefits. R. 10–20. The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Hamon's date last insured is March 31, 2005. R. 13, 240, 254. Therefore, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520);

2

found that Hamon suffered from the severe impairments of obesity, degenerative disc disease of the cervical, lumbar, and thoracic spine, and status–post surgery. R. 15. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 16. The ALJ further found that Hamon retained the RFC through his date last insured of March 31, 2005 to perform a range of sedentary work, with the ability to lift, carry, and push/pull up to 10 pounds occasionally; sit for six hours in an 8–hour workday; stand/walk up to two hours in an 8–hour workday; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and occasionally stoop, kneel, crouch, and crawl. R. 16. The ALJ determined that Hamon could not return to his past relevant work as truck driver, general laborer, or carpenter (R. 19), but that Hamon could work at jobs that existed in significant numbers in the national economy. R. 20. Thus, the ALJ concluded that Hamon was not disabled prior to his last date insured. R. 20. On April 25, 2013, the Appeals Council denied Hamon's request for review (R. 1–4), and this appeal followed.

## **ANALYSIS**

Hamon generally asserts that the ALJ's decision is not supported by substantial evidence. Specifically, Hamon claims that the ALJ "selectively gleaned statements from Hamon's medical records to support his finding;" erroneously used Hamon's activities of daily living as a basis for determining that he was not disabled; erroneously substituted his own medical opinion for that of consultative physician James Dallis, M.D.; and failed to analyze the cumulative effect of all of Hamon's medical problems prior to March 31, 2005.

---

Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

3

Hamon claims that he is entitled to social security benefits for a closed period of time beginning August 6, 1999 through March 31, 2005, his date last insured. The focus of this claim, therefore, is on whether Hamon has established that he was disabled, and therefore eligible for benefits during this closed period. In August 1999, Hamon was forty three years old and working as a furniture delivery man (medium, unskilled and semiskilled work). R. 47–48, 174. Hamon sustained a work-related neck injury in July 1999, when he was carrying furniture and felt a "pop and a snap" in his neck. R. 301. An MRI of the cervical spine taken on August 24, 1999, showed an extradural defect at the C3-C4 and C5-C6 levels, with nerve root compression on the left side at C5-C6. R. 301. Neurosurgeon Raymond V. Harron, D.O., found that Hamon suffered from a left C6 radiculitis secondary to nerve root compression and recommended surgery. R. 301. On November 1, 1999, Dr. Harron performed an anterior cervical diskectomy and fusion at the C5-C6 level. R. 301, 305–07.

Post-surgery, Hamon continued to complain of discomfort, prompting Dr. Harron to order an electromyelogram (EMG) and nerve conduction studies to rule out the possibility of carpal tunnel syndrome. R. 300. Testing showed chronic left C5 to C7 cervical radiculopathy with no carpal tunnel syndrome. R. 311–12. In the following months, Hamon continued to report symptoms of numbness and tingling in his left thumb and index finger, and pain in his neck, left scapular area and shoulder that had not changed after the surgery. R. 279–80, 296, 311–12. His doctors determined that he had a persistent C6 radiculopathy on the left, and recommended a second surgery to decompress the C6 nerve root. R. 280, 296.

On May 26, 2000, Dr. Harron performed a left C5-C6 posterior cervical laminectomy with disckectomy on Hamon. R. 317, 321. In July 2000, Dr. Harron noted that Hamon had "improved markedly" since his last visit, with his muscle spasm in the left upper extremity

4

"pretty much gone." R. 278. Dr. Harron stated that Hamon experienced residual numbness and tingling in a C6 distribution on the left, which he found to be a permanent disability. Dr. Harron noted that Hamon's upper extremity motor power is strong. Dr. Hamon sent him for a functional capacity exam to determine his work capacity, and also referred him to Murray Joiner, M.D. for ongoing care. R. 278.

On August 3, 2000, Terri S. Ferrier, P.T., performed a functional capacity evaluation of Hamon and found him capable of performing sedentary work. R. 325–26. Dr. Joiner also reported that two additional functional capacity exams, performed on September 18, 2003 and July 2004, also indicated that Hamon was capable of performing sedentary to light work. R. 445, 453.

Hamon began treating with Dr. Joiner in August 2000, for left neck pain with radiation to his left arm and numbness in his left fingers and palm. R. 373. On examination, Hamon had tenderness in his left neck and shoulder, limited left lateral rotation to 30 degrees and right lateral rotation to 10 degrees, a full pain free range of motion of the spine, and a negative straight leg-raising test. R. 374–75. Hamon also had normal strength throughout, normal deep tendon reflexes, but decreased sensation over some of his left digits. R. 375. Dr. Joiner diagnosed chronic left C5-6 and C6-7 radiculitis, and prescribed physical therapy and pain medication. R. 375. Dr. Joiner's subsequent records reflect that Hamon returned approximately once or twice a month from September through February 2001. R. 407–12, 417–18. In January 2001, Hamon was hospitalized for addiction to pain medication, at the request of Dr. Joiner. R. 367–72.

On February 19, 2001, Hamon followed up with Dr. Joiner after his detoxification, reporting severe withdrawal, weakness in his left lower extremity and increased pain in the lower thoracic area. He reported feeling and thinking better since being off of medication. His

5

physical examination was normal, aside from tenderness in the left thoracic region. Dr. Joiner noted that Hamon's chronic neck pain was at maximum medical improvement. R. 415. In March 2001, Hamon reported to Dr. Joiner that he was "about the same physically" and was "in search of some employment." R. 414.

Thereafter, Hamon ceased treatment with Dr. Joiner, and returned to full duty work as a truck driver until April 9, 2003, when he was involved in a severe motor vehicle accident. R. 456. Hamon returned to Dr. Joiner on July 14, 2003, complaining of low back pain, occasionally radiating to his left hip. R. 456–58. Hamon also reported that his chronic neck pain was controlled. R. 458. An MRI performed in June 2003 revealed mild disc desiccation and loss of disc height at L5-S1. R. 459. Hamon's physical examination in September 2003 revealed tenderness and spasms in his thoracic and lumbar spine. The straight leg raising test was negative, and he had full strength in his extremities, with normal reflexes, sensation and strength. R. 452. As noted above, a functional capacity examination performed on September 18, 2003, found Hamon capable of sedentary to light work. R. 453.

Hamon continued to follow up with Dr. Joiner in December 2003, March 2004, June 2004, August 2004, February 2005, and October 2005. R. 439–50. Hamon complained of constant unchanging mid to low back pain, which increased with bending and lifting. R. 439–51. The physical exams throughout that time period revealed that Hamon had decreased lumbar lordosis with tenderness, mild increased tone throughout the thoracic and lumbar paraspinal muscles, no specific SI tenderness, negative straight leg-raising, and normal reflexes, sensation and strength. R. 440, 442, 445, 447, 449, 450. Dr. Joiner diagnosed Hamon with chronic throacolumbar pain and thoracic degenerative change. R. 439–50. In August 2004, Dr. Joiner noted that a FCE performed in July 2004 indicated that Hamon was capable of performing

6

sedentary to light work. R. 445. Dr. Joiner found that Hamon was capable of working within the restrictions outlined in this FCE. R. 445.

Six years later, in July 2010, state agency physician William Humphries, M.D. examined Hamon, and concluded that he was capable of performing light work with additional restrictions on climbing, kneeling, crawling, heights, hazards and fumes. R. 463–66. Dr. Humphries noted that Hamon complained of severe back pain for the past seven years and neck pain since 1999, and was "borderline cooperative" for the evaluation. R. 463.

State agency physicians Richard Surrusco, M.D., and Bert Spetzler, M.D., examined Hamon's medical evidence as of July 2010 and January 2011, respectively, and found that as of March 31, 2005, Hamon retained the ability to perform work at the light level of exertion, with certain postural restrictions. R. 61–62, 82–83.

On February 9, 2012, James Dallis, M.D., evaluated Hamon, and noted that Hamon complained of severe neck and lower back pain. R. 502. A physical examination revealed pain with slight lateral bending of the neck, limited rotation, and limited flexion. R. 502. Hamon had signs consistent with continued radicular symptoms in a C7 nerve root distribution. R. 502. A shoulder abduction relief sign was positive, as well as a Spurling's maneuver, but he had no shoulder instability or muscle wasting. R. 502. A lumbar spine examination revealed limited spinal flexion and motor weakness in the quadriceps muscles. R. 502. His straight leg raising test was positive. R. 502. Based upon his one-time examination, Dr. Dallis concluded that Hamon is not "capable of doing any kind of work given the significant issues with his cervical spine and back," and had been "unable to engage in substantial gainful activity… since April 9, 2003, if not earlier." R. 503.

7

The ALJ reviewed the medical evidence of record, and determined that Hamon was capable of a range of sedentary work through his date last insured. R. 16. The ALJ gave great weight to the conclusions of the FCE performed in August 2000 by Terri Ferrier. R. 18. The ALJ concurred with Dr. Joiner's finding in September 2003 that Hamon was capable of lifting 30 pounds occasionally and 10-15 pounds frequently, but should not perform prolonged, repetitive bending or lifting with his arms extended in front of the body. R. 18. The ALJ gave only moderate weight to Dr. Joiner's conclusions as a whole, however, disagreeing with his finding that Hamon would need an at-will sit/stand option at work. R. 18. The ALJ also gave moderate weight to the opinions of the state agency physicians that Hamon was capable of light work, finding that a limitation of sedentary work was more appropriate based upon the medical evidence. The ALJ gave the opinion of Dr. Humphries little weight, although it was consistent with the ALJ's decision, because it was rendered several years after the relevant period. R. 19. The ALJ likewise gave minimal weight to the opinion of Dr. Dallis, finding it retrospective, unsupported, and inconsistent with the medical evidence. R. 19.

Hamon argues that the ALJ's decision was not supported by substantial evidence, and that he "selectively gleaned statements" from the records to support his findings. Hamon does not point to any specific evidence that the ALJ failed to consider, or any standard of law that the ALJ failed to follow. Rather, Hamon simply argues that, based upon the facts in the record, the ALJ should have found that he was incapable of performing sedentary work during the closed period at issue. Hamon's argument is nothing more than an invitation to re-analyze the facts, re-weigh the evidence and make a de novo determination of the proper RFC in this matter, which I am not permitted to do under the regulations. The issue before this Court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight

8

of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

The medical evidence of records supports the ALJ's conclusion that Hamon was capable of performing a limited range of sedentary work during the relevant time period. Specifically, functional capacity testing performed on three different occasions—August 2000, September 2003 and July 2004— all indicated that Hamon was capable of performing at least sedentary work. R. 325–26, 445, 453. Likewise, Hamon's treating physician, Dr. Joiner, found on several occasions that Hamon was capable of sedentary work. R. 373, 375, 445, 453, 455. All other medical opinions in the record, aside from Dr. Dallis, concluded that Hamon was capable of performing, at minimum, a range of sedentary work. R. 61–62, 82–83, 325–26, 455.

Hamon emphasizes his consistent statements in the medical records that he continued to experience pain after surgical intervention and his automobile accident, as evidence that he is disabled. A claimant cannot make a showing of disability merely by demonstrating that he experiences pain. Green v. Astrue, 3:10CV764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) (citing Hays v. Sullivan, 907 F.2d 1453, 1457–58 (4th Cir. 1990) ("An individual does not have to be pain-free in order to be found 'not disabled.'"), report and recommendation adopted, 3:10CV764, 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). Rather, the pain must be so severe as to prevent the claimant from performing any substantial gainful activity. Foster v. Heckler, 780 F.2d 1125, 1129-30 (4th Cir. 1986). Certainly, Hamon's records reflect consistent complaints of pain, which was recognized by the ALJ when he found that Hamon suffered from severe impairments of obesity and degenerative disc disease of the cervical, thoracic and lumbar spine.

9

R. 15.  The ALJ accounted for Hamon's pain by reducing him to a limited range of sedentary work, the most restricted level of work available under the regulations. R. 16.  Although Hamon's records indicate that he suffered from neck and back pain, they do not demonstrate that he was functionally unable to perform the limited range of sedentary work set forth by the ALJ.

**Consultative Physician's Opinion**

Hamon also argues that the ALJ erroneously substituted his own medical opinion for the opinion of Dr. Dallis.  It is clear from the ALJ's decision and the record that he appropriately considered Dr. Dallis' opinion, and for several valid reasons, found that it was only entitled to minimal weight.

When making an RFC assessment, the ALJ must assess the medial opinions of record. 20 C.F.R. § 404.1527(b).  The regulations provide that the opinion of a consultative examiner like Dr. Dallis should be given more weight than a medical source that has not examined the claimant. 20 C.F.R. § 404.1527(c)(1).  However, the ALJ must weigh several factors when evaluating a consultative opinion, such as whether relevant medical evidence supports the opinion, how well explained the opinion is, how consistent the opinion is with the record as a whole, and whether the opinion is from a specialist in the relevant field. 20 C.F.R. § 404.1527(c)(1–6).  Ultimately, the ALJ must consider the opinions received in light of the evidence of record and determine whether the record supports the opinions offered.  While an examiner's opinion is generally accorded more weight than a non-examiner's opinion, if an "opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001) (citing Craig v. Chater, 76 F.3d 385, 590) (4th Cir. 1996)).

10

Here, Dr. Dallis first examined Hamon on February 9, 2012, nearly seven years after the period at issue in this case, August 1999 through March 2005. R. 254, 502. The Fourth Circuit has recognized that a treating physician can offer a retrospective opinion regarding the past extent of an impairment. Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991). However, such opinions may be discounted when they are dated long after the date last insured and are inconsistent with other opinions from the relevant period. Brown v. Astrue, CIV. A. 8:11-03151, 2013 WL 625599, at *15 (D.S.C. Jan. 31, 2013) report and recommendation adopted, 8:11-CV-03151-RBH, 2013 WL 625581 (D.S.C. Feb. 20, 2013) (citing Johnson v. Barnhart, 434 F.3d 650, 656 (4th Cir. 2005). Accordingly, I find that Dr. Dallis's opinion is entitled to little, if any, weight, based upon temporal proximity. Dr. Dallis also failed to state Hamon's specific functional limitations in his opinion, but rather made a broad general conclusion that Hamon was unable to engage in substantial gainful employment since 2003. Further, Dr. Dallis's retrospective opinion regarding Hamon's disability seven years earlier is inconsistent with the other medical opinions in the record, including those rendered contemporaneously with the relevant time period. Thus, the ALJ's decision to give Dr. Dallis's opinion minimal weight is supported by substantial evidence.

**Consideration of Activities of Daily Living**

Hamon also objects to the ALJ's consideration of his activities of daily living as a basis for finding him capable of sedentary work. Hamon acknowledges that the ALJ is entitled to consider his activities of daily living, but claims that the ALJ must also consider his ability to function outside the home. Hamon further alleges that the ALJ based his opinion upon his "own perception" rather than the evidence of record. Pl. Br. Summ. J. p. 8. Once again, Hamon does not direct the Court to any evidence in the record that the ALJ failed to consider, or considered in

error.  Hamon is simply asking the Court to re-weigh the evidence, which I am not permitted to do under the regulations.

At the administrative hearing, Hamon testified that he had a driver's license and was able to drive through his date last insured. R. 33.  He testified that on a typical day, he wakes up, makes breakfast, washes his dishes, takes a shower, and watches television. R. 45.  He further testified that he can perform household chores, including washing dishes, sweeping, and doing laundry. R. 46.  The ALJ considered Hamon's activities of daily living, in combination with all the other evidence in the record, and found that it did not support a finding of disability. R. 17.  The Commissioner is required to consider factors such as a claimant's daily activities and treatment used for pain in determining and evaluating a claimant's subjective complaints and credibility. See 20 C.F.R. § 404.1529.   Thus, the ALJ's consideration of Hamon's daily activities as an indicator of disability is not an error.

**Cumulative Effect of Impairments**

Finally, Hamon alleges that the ALJ failed to consider the cumulative effects of his impairments.  Hamon cites no facts or evidence in support of this argument, aside from quoting the legal standard for evaluating the effect of multiple impairments and stating that Hamon 's medical records "indicated that he suffered from chronic back pain." Pl. Br. Summ. J. p. 9.

Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50.  In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ

12

must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). "[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

Here the ALJ found that Hamon suffered from severe impairments of obesity, as well as degenerative disc disease of the cervical, thoracic and lumbar spine. R. 15. The ALJ's opinion reveals that he thoroughly considered all of the evidence relating to Hamon's alleged physical impairments when developing an RFC and finding Hamon not disabled. Hamon fails to state with any degree of precision how the restrictions provided for in the RFC neglect to address any combined impact of his physical impairments. Therefore, I find that the ALJ did not fail to analyze the combined effect of Hamon's medical problems.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Hamon's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file

13

specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

          Enter: July 29, 2014

          *Robert S. Ballou*
          Robert S. Ballou
          United States Magistrate Judge